[Cite as *State ex rel. Cribbs v. Indus. Comm.*, 2019-Ohio-2883.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Brady C. Cribbs, | : | |
| Relator, | : | |
| v. | : | No.   17AP-661 |
| Industrial Commission of Ohio, et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on July 16, 2019

**On brief:** *Plevin & Gallucci, Co., L.P.A., Frank L. Gallucci, III; Paul W. Flowers Co., L.P.A.,* and *Paul W. Flowers,* for relator.

**On brief:** [*Dave Yost*], Attorney General, and *John R. Smart,* for respondent Industrial Commission of Ohio.

**On brief:** *Consolo Law Firm Co., LPA,* and *Frank Consolo,* for respondent City of Brooklyn.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BRUNNER, J.

{¶ 1} Relator, Brady C. Cribbs, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate the August 29, 2017 order of its staff hearing officer ("SHO") and ordering the commission to proceed with consideration of his claim. The SHO's order granted the application of Cribbs' employer, respondent City of Brooklyn, to suspend further consideration of Cribbs' claim under R.C. 4123.651. For the following reasons, we deny Cribbs' request.

{¶ 2}    In accord with Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate of this Court who issued a decision, including findings of fact and conclusions of law, that is appended to our decision.  The magistrate found that Cribbs failed to demonstrate a clear legal right to have the suspension of his claim lifted, given his failure to fully cooperate in the evaluation requested by his employer.  The magistrate also found that the commission did not abuse its discretion when it suspended further consideration of Cribbs' claim under R.C. 4123.651.  As a result, the magistrate recommends we deny Cribbs' petition for a writ of mandamus.

{¶ 3}    Cribbs has filed objections to the magistrate's decision.  Cribbs argues that the commission's Medical Examination Manual ("manual") gives him the right to refuse mental/behavioral testing by his employer's examining doctor. Cribbs posits that his refusal constitutes good cause under R.C. 4123.651(C).  Based solely on this alleged good cause, Cribbs argues the commission cannot suspend his claim.  We disagree.

{¶ 4}    The question before us is not whether Cribbs had the right to refuse mental/behavioral testing.  Rather, the question is whether his refusal to subject himself to such testing by his employer's examining doctor constitutes good cause under R.C. 4123.651(C) so as to prevent his claim from being suspended.  We conclude it does not.

{¶ 5}    As stated by the magistrate, the commission manual sets forth guidelines for its medical examiners.  The manual contains the express language that, "[t]his Manual presents Commission policies for independent medical examinations and medical file reviews."  (App'x at ¶ 25.)  The manual is not directed toward examinations performed by an employer's doctor.  An employer's right to have a claimant examined is set forth in R.C. 4123.651(A) and (C), which in pertinent part provide:

> (A) The employer of a claimant who is injured or disabled in the course of his employment may require, without the approval of the administrator or the industrial commission, that the claimant be examined by a physician of the employer's choice one time upon any issue asserted by the employee or a physician of the employee's choice or which is to be considered by the commission. * * *
>
> * * *
>
> (C) If, without good cause, an employee refuses to submit to any examination scheduled under this section or refuses to release or execute a release for any medical information,

record, or report that is required to be released under this section and involves an issue pertinent to the condition alleged in the claim, his right to have his claim for compensation or benefits considered, if his claim is pending before the administrator, commission, or a district or staff hearing officer, or to receive any payment for compensation or benefits previously granted, is suspended during the period of refusal.

{¶ 6} The commission manual argued by Cribbs has no effect on the employer's right to have a claimant examined pursuant to R.C. 4123.651(A). Moreover, if a claimant's refusal to submit to, or to fully participate in, an examination were to automatically constitute good cause, R.C. 4123.651(C) would have no effect. We hold that Cribbs' reliance on the manual as the basis for good cause under R.C. 4123.651(C) is in error.

{¶ 7} Cribbs has provided no other argument for why he had good cause to refuse mental/behavioral testing by his employer's doctor. Absent a showing of good cause, suspension of the claim is required during the period of refusal. R.C. 4123.651(C). For these reasons, we overrule Cribbs' objections.

{¶ 8} Subsequent to the submission of this matter to the panel, respondent City of Brooklyn filed a notice of supplemental authority. The commission timely filed a motion to strike the notice of supplemental authority. We find that the supplemental authority that was filed involved the commission's authority under a section of law that is inapplicable to this case. Therefore, we grant the commission's motion to strike.

{¶ 9} Based on our review of the magistrate's decision, our independent review of the record, and due consideration of Cribbs' objections, we find the magistrate has properly stated the pertinent facts and applied the appropriate law. We thus overrule Cribbs' objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of facts and conclusions of law in that decision. Accordingly, Cribbs' petition for a writ of mandamus is denied.

*Objections overruled; writ of mandamus denied; motion to strike granted.*

BROWN and SADLER, JJ., concur.

<u>APPENDIX</u>

IN THE COURT OF APPEALS OF OHIO
TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Brady C. Cribbs, | : | |
| Relator, | : | |
| v. | : | No. 17AP-661 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

**Rendered on March 21, 2018**

*Plevin & Gallucci Co., L.P.A., Frank L. Gallucci, III; Paul W. Flowers Co., L.P.A.,* and *Paul W. Flowers,* for relator.

*Michael DeWine,* Attorney General, and *John Smart,* for respondent Industrial Commission of Ohio.

*Consolo Law Firm Co., LPA,* and *Frank Consolo,* for respondent City of Brooklyn.

IN MANDAMUS

{¶ 10} Relator, Brady C. Cribbs, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order for the consideration of relator's claim and ordering the commission to proceed.

Findings of Fact:

{¶ 11} 1.   On October 8, 2015, while working as a firefighter/paramedic for his employer city of Brooklyn ("city"), relator sustained a work-related injury and his claim was originally allowed for the following physical conditions:

> Sprain of ligaments of thoracic spine; sprain of ligaments of lumbar spine; T6-T7 and T8-T9 disc herniation.

{¶ 12} 2.   In March 2017, relator filed a C-86 asking that his claim be additionally allowed for certain psychological conditions:

> Now comes claimant, by and through counsel, and hereby requests that the allowance of the claim be amended to include Substantial Aggravation of Pre-existing Major Depressive Disorder, Single Episode and Substantial Aggravation of Pre-existing Anxiety Disorder based upon the medical diagnosis of James M. Medling, Ph.D.
>
> Claimant further requests that the Bureau of Workers' Compensation pay for the cost for the consultation examination conducted by James M. Medling, Ph.D. once the additional allowance has been included in the claim.

{¶ 13} 3.   Relator submitted the February 27, 2017 report of James A. Medling, Ph.D., in support of his request.   Dr. Medling interviewed relator and administered the Personality Assessment Inventory test and ultimately concluded as follows:

> Diagnostically, he presents with Depressive Disorder NOS and Anxiety Disorder NOS.These diagnoses convert to Major Depressive Disorder, Single Episode, Unspecified (F32.9) and Anxiety Disorder Unspecified (F41.9). He became aware of mixed feelings of anxiety and depression following his 2010 work injury. These feelings were at subclinical levels through his 2012 injury and at the time of his 2015 injury. These feelings were at subclinical levels through his 2012 injury and at the time of his 2015 injury. Since his 2015 injury, his mixed complaints of anxiety and depression have resulted in clinically significant levels of distress and now meet diagnostic criteria for diagnosable anxiety and depressive conditions. Thus, his Major Depressive Disorder, Single Episode, Unspecified and Anxiety Disorder Unspecified are a substantial aggravation of his 10/6/15 work injury. Psychological counseling is recommended. He may also benefit from a psychiatric evaluation to assess his need for

psychotropic medication. He can manage any monies awarded.

{¶ 14} 4. The Ohio Bureau of Workers' Compensation ("BWC") granted relator's application and the city appealed.

{¶ 15} 5. In a letter dated May 26, 2017, relator was notified that the city's managed care organization was scheduling him for an independent psychological examination with Michael A. Murphy, Ph.D.

{¶ 16} 6. The evaluation with Dr. Murphy took place on June 15, 2017. At the outset of his report, Dr. Murphy noted that relator refused to participate in any psychological testing:

> The Injured Worker was informed and understood that the results of this evaluation are not confidential. He signed a release of information and limits of confidentiality form. The Injured Worker was requested to complete the MCMI-III on multiple occasions but refused. He states, "My attorney told me not to (i.e. complete testing) as far as I know."

{¶ 17} 7. Dr. Murphy identified the medical records reviewed, discussed his findings on examination specifically noting childhood counseling, use of drugs and alcohol in college, and increased use of alcohol following the 2015 injury. With regard to his conclusions, Dr. Murphy stated:

> This evaluation was undermined by the Injured Worker's attorney who advised not to complete testing. The Injured Worker refused testing. From this standpoint he was non-compliant. The Injured Worker reported suicidal ideation as an adolescent along with counseling. He also reported depression associated with his first back injury (2010). He reported anxiety for the last few years, but many unrelated medical factors are operative.
>
> I cannot substantiate the alleged conditions.
>
> No evidence of social or occupational impairment was established. The Injured Worker reported working 103.7 hours every two weeks, currently. He was off early 2016, but for an unrelated left knee injury. The Injured Worker has many friends, travels extensively, plays golf, dines out and mows grass. The Injured Worker's cognitive functioning (i.e. memory and executive functions are fully intact.)

I cannot establish any evidence of acceleration of the alleged conditions given his lack of impairment and elevated level of activity.

Some mild emotional distress would be present in the absence of this injury.

* * *

The DSM-IV and V requires some form of impairment to substantiate the presence of a condition. I cannot objectively substantiate the factual basis that this injury aggravated the alleged DSM conditions.

Also, note this Injured Worker reported problematic alcohol use. He does not operate a vehicle under the influence of Phenergan. The effects of alcohol and medication may mimic symptoms of both depression and anxiety.

Some mild features of depression and anxiety would be present in the absence of this injury.

* * *

This 10/08/2015 injury did not cause, substantially aggravate, or directly cause the alleged conditions.

{¶ 18} 8. Following a hearing before a district hearing officer ("DHO"), relator's claim was allowed for the psychological conditions requested. Specifically: "substantial aggravation of pre-existing major depressive disorder, single episode; substantial aggravation of pre-existing anxiety order."

{¶ 19} 9. The city appealed and the matter was heard before a staff hearing officer ("SHO") on August 24, 2017. The SHO vacated the prior DHO order and suspended further consideration of relator's claim due to his refusal to fully participate in the examination by Dr. Murphy. Specifically, the SHO order provides:

The activity in this claim regarding the requested additional psychological allowances is suspended pursuant to the provisions of R.C. 4123.651(C). The Employer scheduled a defense psychological evaluation on 06/15/2017 before Michael Murphy, Ph.D. and the Injured Worker did attend this examination. However, the Injured Worker refused to complete the psychological testing during his evaluation by Dr. Murphy, indicating he was refusing on the advice of

counsel. The Injured Worker appeared at the instant hearing and testified he was told by his attorney not to perform any written testing during his evaluation. Dr. Murphy indicated in his report dated 06/15/2017 the "evaluation was undermined" by the Injured Worker's failure to fully participate.

This issue shall remain suspended until such time as the Injured Worker indicates, in writing, he will in fact appear for a defense psychological evaluation and will fully participate in this evaluation. After the new evaluation has been completed, the Injured Worker's C-86 Motion filed 03/21/2017 regarding the requested additional allowances is to be reset at the District Hearing Officer level.

{¶ 20} 10. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 21} Relator asserts the commission abused its discretion when it suspended further action on his claim. For the reasons that follow, the magistrate finds the commission did not abuse its discretion.

{¶ 22} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 24}  The commission suspended relator's claim pursuant to R.C. 4123.651which provides, in pertinent part, as follows:

> Medical examinations initiated by employer; release of medical information; sanction for employee's noncompliance.
>
> (A)  The employer of a claimant who is injured or disabled in the course of his employment may require, without the approval of the administrator or the industrial commission, that the claimant be examined by a physician of the employer's choice one time upon any issue asserted by the employee * * *.
>
> * * *
>
> (C)  If, without good cause, an employee refuses to submit to any examination scheduled under this section or refuses to release or execute a release for any medical information, record, or report that is required to be released under this section and involves an issue pertinent to the condition alleged in the claim, his right to have his claim for compensation or benefits considered, if his claim is pending before the administrator, commission, or a district or staff hearing officer, or to receive any payment for compensation or benefits previously granted, is suspended during the period of refusal.

{¶ 25}  Here, the city referred relator for a psychological examination by Dr. Murphy. While relator did attend that evaluation, he refused to participate fully in the examination.

{¶ 26}  In support of his argument that he had the right to decline mental and behavioral testing, relator cites from the Industrial Commission's Medical Examination Manual, effective January 1, 2017. The introduction for the manual provides the purpose of the manual:

> This Manual presents Commission policies for independent medical examinations and medical file reviews. The purpose of the independent medical examination (IME) is to determine the degree of impairment resulting from an allowed work injury. Most examinations are to assist the Commission in the consideration of Permanent Total Disability (PTD). The first section of the manual explains administrative and examination policies common to all Commission independent examinations and file reviews. The remaining six sections of the manual describe specific examination requirements for evaluating various body parts,

regions, or organ systems affected by an industrial injury or disease, and some special considerations related to maximum medical improvement.

The manual also provides the following relevant administrative policies:

**Legal Status**

Examiners are independent contractors. Referral for medical review or examination represents a single fee-for-service commitment for the Commission and the examiner. The Commission requires examiners maintain professional liability insurance with $1 million per incident and $1 million annual aggregate.

* * *

**Impartiality**

Examinations are to be performed by physicians and psychologists with no bias or conflict of interest with respect to the Injured Worker, the employer, or the workers' compensation system.

Examiners are excluded from performing specialist examinations when they have examined the Injured Worker or reviewed the claim file for the employer, the Injured Worker, the Bureau of Workers' Compensation or the Industrial Commission within three years of the filing date of an application for permanent total disability. Physicians and psychologists are also excluded from performing specialist examinations when they have a contractual relationship with the Injured Worker, employer, or their representative, or have been the physician of record for the Injured Worker.

An examiner who does not meet the impartiality requirements will decline to examine the Injured Worker. The Injured Worker will then be rescheduled with an impartial examiner.

Commission examinations are independent examinations. No authorization for treatment of the Injured Worker is implied or given in the Commission's request for examinations.

Physicians or psychologists performing examinations for the commission may not communicate with the Injured Worker other than during the examination and may not accept the examined Injured Worker into treatment. Additionally, they may not communicate with the employer, the Bureau of

Workers' Compensation or representatives of the Injured
Worker or employer.

{¶ 27} As above noted in the quoted sections, the commission's medical examination manual specifically pertains to medical and psychological examinations made at the request of the commission. These are commission independent examinations and file reviews, with a single fee-for-service commitment between the commission and the examiner, and commission examinations are independent with no authorization for treatment being implied or given in the request.

{¶ 28} As previously noted, relator cites the following provision at page 71.

MMPI and Bender-Gestaldt are considered part of a psychological examination and are not billable. Injured Workers may decline testing, and if this is the case, note the refusal and base opinions on the available data.

{¶ 29} This cited portion specifically pertains to independent medical examinations requested by the commission and does not address examinations made at the request of the employer. As such, relator's reliance on this manual is misplaced.

{¶ 30} When the commission suspended further processing of relator's claim, that suspension was done in accordance with R.C. 4123.651which pertains to examinations initiated by the employer, and further provides a sanction in the event the employee fails to comply. As stated in subsection C, if, without good cause, an employee refuses to submit to any examination scheduled under this section, his right to have his claim for compensation or benefits considered, or to receive any payment for compensation or benefits previously granted, is suspended during the period of the refusal. Because the manual provisions on which relator relies do not pertain to his factual situation, relator did not show good cause for his refusal to submit to Dr. Murphy's examination.

{¶ 31} Clearly, the commission did not abuse its discretion when it suspended further consideration of relator's claim. As such, this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

## NOTICE TO THE PARTIES

**Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).**